May it please the Court. Yes, go ahead. May it please the Court. Matthew Freitas on behalf of Northeast Medical Services, which I'll refer to as NEMS, throughout this argument with me at council table is Jim Felsman and David Bender for the appellant. NEMS was fully prepared to enter into an agreement, a binding settlement agreement, on September 4, 2014, but that agreement did not become binding for at least three fundamental reasons, and in addition to that, we now have a fraud on the court or unjust, unclean hands argument. The first reason is NEMS insisted upon a release of administrative remedies, including exclusion, that are at the hands of the Office of Inspector General at the Department of Health and Human Services. That release was explicit. There is nothing in the record that rebuts NEMS' insistence on that release, and it's perfectly clear that there is no release. Judge Beeler's order didn't give it? Answer this question. I think Judge Beeler interpreted that contingency as being satisfied by an agreement not to require a corporate integrity agreement, right? Isn't that what she concluded? Yes, Your Honor. Now, what was that based on, if there's nothing in the record that satisfies you? Strangely, that's based upon largely her own participation in the settlement discussions and her memory, which I think she alludes to in her decision, and that's an awkward aspect of this case, but that memory can't supplant or replace the plain statements that lead up to it that are unrebutted in the record, unrebutted by opposing parties, and the statements thereafter. So I'd say that about that, Your Honor. I'd also say that her construction of the term simply is illogical, and it's because there is no such thing as no corporate integrity agreement alone. The way a party has a protection from a corporate integrity agreement, which can be a very burdensome thing. I recognize that parties don't like them. You have the government up in your business a lot longer than you'd want to in ways that you wouldn't want to, and parties like to avoid that if they can, but the way a party gets protection from that is through the release of administrative remedies. It goes something like this. If there's a release that NEMS explicitly bargained for in the settlement agreement, which there's not, and that's one of the key fundamental flaws. If it's there, and after we settle, and the OIG approaches NEMS and says, I want you to enter a corporate integrity agreement. No, not only that, I don't want. I insist. You must enter that agreement. At that point, a party that has a release of administrative remedies, including exclusion, all the weapons at the disposal of the OIG, there's no threat of a CIA. That is how you get protection from a corporate integrity agreement. It's through the release, and it's crystal clear and undisputed here that the release doesn't exist in the draft agreement the government presented to NEMS, in Judge Beeler's order, or ultimately in the judgment. Let me see if I understand. What NEMS is trying to do is stay in business with the government. Absolutely, Your Honor. And so the whole idea was that, to get yourself in a position, and you treat the discussion as a condition precedent, that in this there was really no contract except that it had a condition precedent of you getting that protection. Yes, Your Honor. Now, the magistrate judges didn't see it that way. Well, actually, I think the magistrate judge did, and all parties do, recognize that the condition was a condition precedent or proceeding. In other words, everyone agrees that it had to be satisfied in order for the remaining terms to become binding. Well, if everybody agrees to it, why are we here? Good question, Your Honor. I'm ready for that. The answer to that one is because there's a disagreement as to the meaning of the term. So there's everyone agrees on step one, which is there is a condition precedent that must be satisfied for the remaining terms to become binding. And that's why the word tentative was used throughout the record. Can I ask you, are we looking at basically ER 10, that one statement in the transcript where the judge says she's orally summarizing? I just want to make sure we're looking. And the key phrase is contingent on NEMS resolution of its Federal administrative remedies with Nancy Brown? Correct. Is that what it comes down to? Is that you say that that does not in any way limit it, or you say that that does carry with it the exclusion remedy? Yes. And they say the judge ended up saying, no, it didn't. That's what this whole thing comes down to? The meaning of the contingency is one of the threshold disputes in this case. And I think common sense gets to, I was going to step back a moment and say there's a lot of things that get to the definition of a meaning of a term in a contract. There's meaning, there's context, there's the conduct of the part. There's a lot of surrounding circumstances, and I've only honed in on a couple. But context is a big one here. NEMS is a Federal grantee, a Section 330 Public Health Service grantee. It gets a grant from the Federal Government. That grant is the backbone of its whole existence. Without it, it doesn't have special reimbursement rights. It doesn't have special rights to participate in risk contracts. It doesn't get drugs at a discount. It doesn't have immunity for malpractice. It's the epicenter of what it is. And it's a Federal grantee. So that means the grantor, if they don't like what you're doing, they take away your grant and you're out of business. Even though they've been in business for 30-plus years doing good work, it's over. What is an entity that has that risk going to insist upon, as NEMS insisted upon here, and it's clear in the record, it's going to insist upon protection against exclusion. Particularly when this is the second time the government has characterized the same claims. These are single pieces of paper. The same claim, twice characterized as fraudulent. Not all of them. There's an overlapping core. And where government officials have referred to NEMS as frequent flyers, meaning, this is more, we've seen you more than once. Well, it's asking a lot of this Court to get into the substance of this case, and I know that's not part of this current argument, but... Can I, I'm sorry, I just need clarification on this. Is it undisputed that Nancy Brown does not have the authority to grant you this exclusion, to take that off the table? Is it undisputed that she does not have it? No, it's, let me try to say it this way. That's a bad way of phrasing it. But I'm just saying, the judge said, when I referenced with Nancy Brown, the reason I know that that was not giving you this, you're going to have to help me out with the terminology, but I understand you want to just be protected from this exclusion remedy that could otherwise be imposed. Correct. The judge says, well, Nancy Brown doesn't have the authority to give you that. So when I said with Nancy Brown, that means that wasn't part of the contingency, right? Right. And that is incorrect as a matter of fact in law. That, that construction of the judge that Nancy Brown does not have the authority to give that release is flat out wrong. And I think you'll hear that from opposing counsel, but if you don't, I'll be flabbergasted. I think you're going to hear that Nancy Brown, or whoever sits in her chair, has the authority to release the administrative remedies that are at the hands of the government. It's in her lap to do that. And that's why this notion that NEMS walked away from anything is really not true, because it was in the government's hands to hand us the release we insisted upon. And more than that, it was Nancy Brown's authority. So absolutely. She both is the person who can say, the government wants a corporate integrity agreement here, and the only way we're going to give you that release is if you enter one. Or there's a policy, a stated policy of the Office of Inspector General that was in existence at the time of this case that indicated there will be cases where the Nancy Brown person will not insist upon a CIA, but nonetheless give you the release of administrative remedies, including exclusion. And NEMS 1, what we refer to as NEMS 1, was a perfect example of that happening. So we had an illustration which the government repeatedly cited as, this is a good example of a false claims act settlement. Well, that example – sorry. I keep interrupting. I was on a roll. I know. I was just trying to get this straight, because I really – it is hard to believe that all of you good people are spending all this time fighting over whether this – I think that's the second time in this case that exact observation was made. Okay. But so – just so I understand, the magistrate judge found incorrectly as a factual matter, you're saying, that Nancy Brown does not have the authority to grant relief from exclusion. Is that – that's what the – her decision says Nancy Brown's authority is thumbs up or thumbs down on the CIA. That's what she said. The false implication of that is that she – Nancy Brown could not give the release that NEMS insisted upon. If you had Magistrate Judge Buehler here today, I'm pretty sure she would concede that Nancy Brown has that authority, as I expect the federal government to concede as well. The reason I – my – our position, let's say. The reason NEMS sees Nancy Brown as having taken on the meaning that she's taken on is that in this record, if you're trying to force feed a settlement agreement, you only have so many facts to work with, and one of them is there's no release, and the other is there's no CIA. So if you're trying to insist upon an enforced agreement, then you have to misconstrue that contingency to mean no CIA was all NEMS wanted. Never mind the risk of exclusion. Never mind all that other stuff. All they wanted was no CIA. They would take their chances with the OIG. That's – that's what she did. Honestly think that there is a – there's a – one of the troubles here is that we have a magistrate that was rotating back and forth between facilitator of a settlement and then writing a decision, and I think that can be a challenging exercise. First of all, let me back up a little bit. There's – there's no communication from Nancy Brown on this agreement, is there? No, Your Honor. I mean, at least no communication that transmits a decision on her part, right? No, Your Honor. Nothing. All right. So who, according to, I guess, the defendants and the magistrate judge, who made the decision that the administrative settlement provision has been satisfied, if it was not Nancy Brown? It's a mystery, Your Honor. The record doesn't show. The record doesn't show. The record has a very slender read that the entire argument that the contingency was satisfied rests upon, and it's a declaration of Federal This was somehow communicated to NEMS. It's a mystery. That's why I say it's a mystery. In a case where the – where the contingency reads, NEMS will resolve its – I'm sorry, contingent on NEMS resolution of its Federal administrative remedies with Nancy Brown, there's two words in that sentence or phrase that suggest, Your Honor, I think in response to your question, there has to be something from Nancy Brown. And without it, you're never going to clear this hump. You're never going to clear this hurdle. There's nothing with Nancy Brown. There's no communication from Nancy Brown. And there's certainly no resolution, which is really the release of our concerns with administrative remedies. Do you know the communication, whoever it's from, that the magistrate judge depended upon to find that this contingency was satisfied? Yes, Your Honor. And it would be the declaration of Melanie Proctor, who's, I believe, going to argue next. You mean counsel's declaration? Yes. All right. And I didn't mean any offense by the slender read. It was – that was just a argument. I don't think that that was sufficient to satisfy the contingency. But beyond that, the screaming absence of the release is really what – is why the contingency wasn't satisfied. If I – I was going to move on to another point. Second fundamental reason why there's no enforceable agreement is that the government sought to enforce less than the full agreement. This was a single global settlement agreement. There's no dispute about that in the record, not in Judge Buehler's decision. She will say, and she has said, that there were three separate settlement agreements. They were clearly placed on the record three separate times, all separate. That is a myth. The record shows otherwise. And the government has never argued otherwise. There's been no argument from state or federal government that this was not a single agreement. They've never pressed that point. In fact, it was only the judge who came up with this rationale without even an argument from counsel, which is another one of those troubling things when I was mentioning the role between magistrate and mediator. So the government never presses the point. And the first time they really grapple with it is their brief in front of this court. And their brief in front of this court says, whatever you can say about the fact that there's a missing term here and a missing case, you've waived that argument. You NEMs who've been objecting to the enforceability of this agreement all along have somehow waived that argument because the Part D case we've referred to, which got carved out, marched along, came before this court, and NEMs lost that case. And then it lost in front of the Supreme Court. Well, it didn't get certiorari. That is conduct that postdates the events that would have to exist to make the agreement binding or not. You can't cite events that happened two years later as your basis for saying there wasn't an enforceable agreement on the day you allegedly entered it. Bigger point on this one. The state government admitted, and this is unrebutted again in the record, admitted to behind the material term, one of the material terms that the judge recited on the record that would have resolved the Part D case. The state also conceded, we agree with you NEMs, that the contemplation was that that term would provide a mechanism to resolve the merits dispute in that case. But we were told, and this is another one of the mysteries, we're not quite sure why the train left the tracks, we can't do that anymore. And that's why the state admitted to us, from their perspective, there was no enforceable deal. That point dovetails perfectly into the fraud on the court issue. And no one likes to say that. I don't like to say it, but I'm sorry that it fits. Why is it fraud on the court? The state and federal government represented that they had supervisory approval of this settlement agreement. Everybody knew that one of the explicit contingencies, another condition precedent to a binding agreement, was supervisory approval of the government's. Everybody knew that. You can't not know that in a case like this. The state and federal government filed a joint motion to enforce. That motion falsely represented that the state had supervisory approval. The government, federal government said they had it too, but there's not an issue as to whether they did or didn't, only the state. Why didn't they have supervisory approval? Because they knew right then and there they were saddled with the burden of admitting there was an enforceable agreement, and they had to back away from one of its material terms, as was their right to do. They have the right as a government to reject a settlement. That's called supervisory authority. They, in effect, rejected one of the material terms of a global settlement. They didn't stand behind it. That's an awfully awkward spot when you're riding shotgun with the federal government on a false claims act case where the federal government wants to enforce a settlement. What do you do? You either don't read the brief that says falsely the state gave supervisory approval, or you read it and you look the other way. It's either reckless or it's knowing. Either one is more than adequate front clean hands, and I'm sorry, I think it's fraud too. It's a fraud on the court in that they invoked the machinery of this court, the lower court as well, on a false representation. NEMS got hit with unclean hands in front of this court not too long ago, and it's unpleasant. It wasn't a false representation. It was arguably taking a position that the state can't keep taking money from it, and the court didn't like how it went about doing that. We'll have to take a hit for that too because we were counsel for them at the time. The reason there's a misrepresentation is not accident. It's not mistake. It's not inadvertence. It's that the state knew there wasn't an agreement but signed a motion that said otherwise, and they took five months to come clean after one of the longest sentences in our brief and possibly the court's history lists every event that they participated in without disclosing that fact. They made a motion to dismiss in front of this court without telling perhaps the best reason for a dismissal. The agreement hadn't yet become binding. The order wasn't ripe. That's the best reason, not there wasn't a judgment, not that there's not sufficient injunctive nature to this order, but that there wasn't supervisory approval. You're not permitted to hold back material information when you're advocating on behalf of the state or federal government. I see I have only two minutes left. I want to reserve the balance. Okay, let's stop the clock. Can I ask, I'll ask your opponents the same question. Is it beyond hope that you all could get together and resolve this now? Is it just too much water under the bridge? Because we have extremely skilled mediators here. I know you've already used Judge Beeler, and we're caught up in this. But honestly, just telling you, I'm not speaking for my colleagues, I look at this and I just wasted on fighting over this when you all wanted to get together and put this case behind everyone. So I don't know. I'm just throwing that out there. Are you, if you tell me that, Judge, we've, this is hopeless, we've, we've tried and it's not going to work, fine. But I want to ask you that and I'll ask your opponents that as well. Well, the phrase that comes to mind right off the bat is never say never. The other phrase that would come to mind is I think NEMS has participated in negotiations in good faith and we do bristle at the notion that that's not the case. I think the record shows a roll up your sleeves, workman-like approach to try to address all these issues. There are instances where we did that. The magistrate, Judge Beeler, ordered us to have a follow-on conversation and it didn't take place because the state's and federal government's view was that would be pointless. Why should we respond to your position when that's going to be unproductive? So that we've had events where both sides criticize the other, that we're not participating in the process as we should. But we're all grown-ups and I think we could have a conversation, but until we do, we have to insist on this agreement going south. I understand. Let me just ask you a more pointed question, I guess. If you got the relief from this potential exclusion remedy today, is everything okay? And y'all can go on about your business and do more productive things? Almost, your honor, almost. And I imagine that might have been what you're getting at with these. Yes, that's what. Yes, I should have answered that question first. I'd say if the release were provided, the agreement provided for a resolution of the Part D issue, the way we negotiated, and that's a big deal. There's $4 million at least at stake on that issue. We didn't give it away for nothing. And we dealt with the passage of time. And by that, I'm saying NEMS never should have had to resist this order or this effort. This was on its face deficient. Don't make us do an appeal and work tirelessly to write a brief that painstakingly lays this all out when you didn't give us the relief. So fix that, too, and maybe you can get Humpty Dumpty back together. But I think we'd have to sit and think about whether there's any prejudice. And if we could decide there wasn't, then I think— Okay, that's a fair answer. I appreciate it. Okay, let's hear from your opponents now. You are Ms. Proctor, I assume? Yes, Your Honor. Okay, great. May it please the Court. Good morning. I'm Melanie Proctor, Assistant U.S. Attorney representing Appellee Plaintiff, the United States, in Appeal Number 1615291. I plan to use about 10 minutes of the 20 minutes allotted to the plaintiff parties to answer questions the Court may have for the federal government. Your Honors, this appeal is about preserving the finality and enforceability of settlements entered into in open court with sophisticated opposing counsel, an experienced litigant, and with the assent of NEM's chief executive officer. I would like to address the question you just posed to opposing counsel, Judge Wofford. We did go to mediation before briefing this case, and that mediation was unsuccessful. You did mediation in this court? We did mediation in this court, and it was unsuccessful. Notably, I would like to draw Your Honor's attention to page 252 of the excerpts of record when NEM sent a draft settlement agreement to the magistrate judge. This was on December 4, 2014. That settlement agreement explicitly took out the fact this is a settlement under the False Claims Act. It sought to characterize the settlement in restitution form. This is a settlement under the False Claims Act. It's the second time NEM has been charged with fraudulent conduct in its billing of Medi-Cal services, and that was an important factor for the United States and for the State of California. I would also like to address some issues we just heard raised. First, with respect to the exclusion contingency, a corporate integrity agreement is the consideration for not pursuing exclusion. There are two kinds of exclusion. There's permissive exclusion, and there is statutory exclusion. Ms. Brown, the Office of the Inspector General for HHS, does not have authority to waive statutory exclusion. Permissive exclusion can be waived. That's a nuance that you're sort of springing on me for the first time. So your opponent, of course, wanted to hear what you had to say on this. So you're refuting his position? Yes. Okay. NEMS 1 settlement at page 160 of the excerpt of record makes clear that the NEMS 1 settlement was pursuant to HHS's self-disclosure procedures, and those self-disclosure procedures encourage companies, medical providers to come forward when they realize that there's been misbilling, there's been some kind of fraud, and the reward for doing so is that exclusion is released. This is not a self-disclosure case. This case was hotly contested and litigated all the way through numerous rounds of settlement talks with Judge Buehler. So in this case, permissive exclusion cannot be released because it is not a self-disclosure settlement. Well, you know, the prior settlement grant with the same entity, right, NEMS, has an administrative exclusion provision in it, right? Yes. The statutory exclusion could not be released. Permissive exclusion was released because of... The paragraph itself doesn't make any distinction between the two. Right. But still, if it's only permissive, it can be released. Why wasn't that pursued? In fact, you know that email that your colleague from the U.S. Attorney's Office sent says that only Nancy Brown can take care of this. DOJ is not involved. You know, talk to Nancy Brown, right? Yes, Your Honor. There were conversations with Nancy Brown. No, between NEMS and Nancy Brown, not you. Yes, Your Honor. And... But those conversations are not reflected in the settlement record before Judge Bieler at all, are they? They were reflected through conversations that were off the record during the settlement talks. That doesn't tell me anything. Well, Your Honor, respectfully, the magistrate judge, her recollection of those settlement talks is owed deference. She was the person who was in the room talking with everybody. And what is her recollection with respect to exclusion, on the record? Her recollection is, on the record before us, is recorded in her decision, where she explained that it was all about the corporate integrity agreement, which is the consideration for not pursuing exclusion. It doesn't mention... Well, if you're talking... If it's in the decision, then the decision doesn't mention the, you know, exclusion at all, right? It's referred to in the broader context of any and all administrative remedies. The word exclusion is not used, is it? I don't recall it being used specifically in her decision, but I would also note, Your Honor, that this issue of exclusion... In other words, if you're saying it reflects off-the-record discussions, you say something about it. Your Honor, it also didn't come up from NEMS until much later in the process. So, from the beginning, after we entered the settlement agreement on the record on September 5th, 2014, as soon as we began negotiating, reducing those terms into writing, NEMS sought to walk away from a number of provisions that were quite clear in the record, namely that it be a False Claims Act agreement. That is... That itself undercuts the arguments about any ambiguities in the terms that were entered into the record. NEMS thought the better of what it had agreed to do and is now, as Judge Wilkin put it, grasping at straws to undo it. If we can get away from the discussions off the record and get to the discussions on the record to settle this appeal, it seems to me there's a strong case that can be made that a condition preceding to the agreement between the government and NEMS was that there would be an approval by Ms. Brown. It's stated in there. Now, whether she has the power, whether she can do what she can do, that's not stated in there. It's just that she has to give approval. And it looks like, to me, from just looking at the whole record, and it's so big I could be mistaken, but it looks like a condition preceding to the settlement that that has to occur. And that made sense to me as I read it over. They're not giving $8 million into the pot not getting something back. What do they want to get back? They want more contracts. That's how they make money. And if that's true, if that is a condition preceding until Nancy Brown gives an approval, if she can, there's no deal. Now, I understand there's records and piles, and I've tried to go through them, but it just strikes me that this is a case where there's a condition preceding that has not been fulfilled, so there's no deal until she does so. Could you respond to that? Yes, Your Honor. The court addressed this as well. The magistrate judge addressed this, that this was the intent of the parties, the objective intent of the parties, is what is binding here on the parties, and that was no CIA. And Nancy Brown and the government, the United States, bound itself before the court that that would not happen if NEMS participated in the state audit process. Nancy Brown, HHS-OIG, wanted to make sure that the state audit process would be sufficient. And once that was done, that the contours of the audit process were fleshed out, HHS-OIG was comforted and said, we won't require a CIA. It would be duplicative. This is a state billing process, and it's up to the states to map out how bills are submitted, how these processes work. That's fine. But the party's agreement was, as a condition preceding, that she would give sign-off, and it's so clear that the sign-off had to be so they can do business. And it just makes sense to me. You don't put up that kind of money otherwise. If that is a condition preceding, and it hasn't been fulfilled, then the magistrate was simply wrong in her interpretation of a contract, and it ought to be sent back to start over. And I know that's the worst thing in the world that any lawyer wants to hear after trying a long lawsuit, but I have some doubts about whether or not the magistrate judge was fair and accurate in this case. Now, she may have had too much to do, but it seems to me with that condition preceding, she went the wrong direction. Now, tell me where I'm wrong. Well, Your Honor, it might be helpful for you to understand the role of the different government attorneys. The U.S. Department of Justice is charged with representing the executive agencies in court. And it was U.S. Department of Justice attorneys, both from Washington, D.C., and the U.S. Attorney's Office that appeared in court and said, no CIA if they participate in the state audit process. Agency counsel don't appear in court on the record and make statements like that. So the magistrate judge was perfectly within her discretion to find that this contingency had been satisfied. Contingent – the condition preceding had been satisfied? It had been satisfied by the fact that attorneys for the United States appeared in court and said there will be no CIA if they participate in the state audit process. But that isn't from Nancy Brown. But it's from the attorneys representing the Department of Health and Human Services. It's the United States Department of Justice that is charged to appear in court and make statements on behalf of executives. I understand that. And they could have said – talked about other – and it was striking to me to have  But once they do it, the government doesn't get to play king's ex by having a lawyer show up and say, this is what happens. They have to bring in, Nancy Brown approves, and there's Nancy Brown's signature. A condition preceding is a condition preceding. I'm sorry, Your Honor, I'm smiling because I think Ms. Brown would prefer her name not be in this either. But the magistrate judge spent pages on this, both on the record, in transcripts, and in her decision discussing this. And we would submit that it was within her discretion to find that the condition had been met. No, but the question is, what was she – I don't know that her vision of what the condition should mean satisfies what the contract says the condition is met. So. But the question still persists, what was the magistrate judge told that letter defined that the condition was satisfied? You made a – apparently made a representation to her that, well, a CIA is enough. Isn't that what it amounts to? She was – And said nothing about the, you know, the exclusion. Well, Your Honor, the issue of exclusion being a concern arose much later in the process. Well, it still was a concern by the time she made her decision, right? Yes, Your Honor. All right. She. And – but she was never told about that concern, is that right? She, meaning the magistrate judge? Well, you told the magistrate judge apparently that, well, the administrative, you know, contingency about administrative actions has been satisfied because there'll be no CIA. Was NIMS a lawyer sitting in the room at the same time? It's a long time ago. I can't remember if they were in the room. I believe that was stated on the record. When we were – when we were arguing. And they were in the room and they made no objection? I don't remember what happened in that courtroom on that day. I do know that NIMS was informed by Ms. Brown after discussing with the state that no CIA would be required. And the CIA is the consideration. Well, okay, so NIMS was informed by Nancy Brown. What was NIMS' response to Nancy Brown? I was not privy to that conversation, Your Honor. It was not what? I was not part of that conversation, Your Honor. I think the record does reflect Judge Buehler emailing counsel for NIMS and informing NIMS that it should have that discussion with Ms. Brown explicitly because HHS-OIG is the entity with authority over administrative process. Right. So the Department of Justice is in district court, not involved in the administrative process. Right. So – so you really can't, you know, it's – you don't have the authority, do you, to tell the magistrate, the judge that, well, all the administrative conditions have been satisfied? Because that's outside your bailiwick. Your Honor, I don't have the authority to take part in the administrative process. But if I am informed by counsel for the agency in charge of that process that all conditions have been met, I do have the authority to. Is that what you're saying? Counsel for the OIG informed you or for HHS informed you that all the administrative contingencies have been satisfied as far as Nancy Brown is concerned? Yes, Your Honor. And you put that on the record? And the NIMS knows about that? Yes, Your Honor. Knew about that during the course of these negotiations? We put that on the record through my declaration and through discussions with the magistrate who relied upon those assertions in her decision. Now, was there an opportunity for NIMS to object to that when you put that on the record? Or to say, well, that doesn't satisfy the condition preceding? They objected in various places in the record. And the court found that their objection was not well-founded. And that was within the court's discretion. So the court made this decision on the merits of the objection. Is that what you're saying? Yes, Your Honor. I think that's reflected in the January 2015 decision. It's hard for me to figure this out, exactly what happened. Thank you. Your Honor, thank you. We're going to need to hear from your counsel, co-counsel. Your Honor, may it please the Court, David Sonko on behalf of the State of California. Along with Adara Stanton, who represents the Department of Health Care Services, she's only involved in the case that was dismissed as a part of the overall settlement. So I'll be making the presentation. I just want to briefly discuss the concept of conditions precedent. We have cited a case, Corvent, I think is the name of it in our moving papers, under California law, which is controlling in cases of contract law. In this case, conditions precedent or precedent are disfavored in the law and contracts or settlements will be strictly construed against them if they can so be. Corvent was a case much like this one where there was an ambiguous or arguably ambiguous term of the contract or settlement agreement, and it left things still to be negotiated between the parties. And I think that case is almost directly on point with the situation we have here. What was ambiguous? I'm speaking just with respect to, you know, getting supervisory authority. What was ambiguous about that? The State had full supervisory authority to enter into the settlement agreement and to sign the transcript from September to January. And let me explain that in detail. You don't have to explain that in detail, but you didn't have the authority to sign off at the end of the processing, right? We did, Your Honor, but this is where I just need to... No, according to the letter, you didn't get it until several months later. What we did not have was control agency approval from the Department of Health Care Services. Right. The State of California, which I... Isn't that the important approval? They're really... Without that approval... One's... Just a minute. Without that approval, the settlement is still contingent, isn't it, as far as you're concerned? I would disagree with that, Your Honor. As a False Claims Act case, which is what this case is, the Attorney General, which is an independently elected official in California, has under Federal statutes that sets up the sole authority... No, it's not a matter of statutes. It's a matter of the agreement between the parties. In other words, the parties agreed that each of the government entities would get supervisory approval, in other words, approval from the client department that was involved. So it had nothing to do with the elected Attorney General supervising the authorities. It's a matter of contract. Only to the extent, Your Honor, that it clears up confusion... The agreement calls for it. ...is because the Department of Health Care Services, it was contemplated as part of the contract that there was going to be an auditor-to-auditor discussion, an auditing process, the Department, which is a separate entity, that's the reason I explained, Attorney General or Department of Health Care Services, had to get control agency approval or supervisory sign-off, a formality to sign off the contract. The problem in this case, and again, I've represented, we did, there was no fraud or misstatement from entering the contract all the way up to making the representations that the State, in false claims of that case, had full settlement authority. But because the terms had not been reduced to a writing, the sister agency of the Department of Health Care Services did not seek their formal sign-off because there was, the terms were unclear at that point in time because NEMS had repudiated the contract. This is a, so the bottom line is that's where the confusion comes about. I don't think that it, in that sense, it's a condition precedent to the contract, meaning that they could have always pulled out and that we didn't have a contract in that instance before final approval from the Department of Health Care Services was obtained because it was bargained for, disclosed up front. It's a one-sided option that's available or present in every government contract that there's going to be the ability to pull out of the contract if, in fact, the NEMS knew about that. There was never, it was disclosed up front, and it was never an issue. Well, except it was made a condition precedent to the final approval of the agreement, right? I disagree with calling that a condition precedent, Your Honor, because, again, it was disclosed and bargained for up front. The analogy I've used is there used to be car manufacturers that would say, hey, buy our car. If you don't like it, bring it back in 72 hours and we'll give you your money back. That's a bargain for, that's not saying that there isn't a car deal there when somebody drives it off the lot, but it's a one-sided option for that person that was bargained for up front for them to withdraw from that contract. So in the general sense, what I'm arguing is you're saying this is a cert, they have 72 hours later after receiving approval to withdraw? Yes. In this case, the deal, at least as to the final settlement authority, was binding on both parties when the deal was formed.  No, Your Honor. The government did, because we disclosed it to them up front. But you're the seller, they're the buyer. You're the one making the deal. You're right, Your Honor. And we are disclosing to them up front that it's subject to us. We retain the ability to make sure that we get final settlement authority on that. I guess I just hear you saying that that contingency was for your benefit, not theirs. So they're not in a position to enforce it against you if it hadn't been met. Exactly, Your Honor. The other thing I just want to address, because it was brought up about, it's a confusing concept, especially because there's two, you've got two state agencies that are working alongside in this case. To say somehow that this was a fraudulent misrepresentation on the court, there's no evidence of that. This was fully disclosed by us, the perpetrators of the fraud, if you will, at the end of when the appeal was ultimately rejected and thrown back to the magistrate. And we notified the magistrate that we had obtained, or Department of Health Care Services had obtained control agency approval. So it doesn't make sense that we were somehow keeping this under wraps, that we didn't have authority. The confusion came about because simply we did have, we being the Attorney General's office, full authority to settle the False Claims Act case on the terms that we did. Okay. Any other critical points you came here to make? Because your co-counsel, unfortunately, took up more of your time. I want to ask a question. I read Corvent before I came here, and I've just gone back to check to make sure, and I think you're wrong. Corvent was not a condition preceding case. Corvent was a case in which there was a statement of settlement before the court. There was no condition preceding in Corvent. So I don't think you properly relied on that. And a reading of the case would show you that it's not pertinent for our case. Thank you, Your Honor. If you have a response, let's hear it. I would only disagree with the core concept of that I don't think every term that is put on the record where there's something to be done at a future date necessarily means it's a condition precedent. And I think in this case, as I read the facts of the Corvent case, it just, to me, looks almost exactly like the case we have at Barr. But there's clear there's no condition precedent unless you divine that the settlement discussion in open court becomes a condition precedent. I don't know of any basis of doing that in law, but I see your argument. Okay. Thanks very much. We will hear from you. You have some time left, two minutes. Okay. Number one, I'd say Corvent stands for the unremarkable proposition that if the parties intend to enter a binding contract and one of the terms is not completely spelled out, but it's nonetheless clear that you can have a binding contract, that's it. There's nothing beyond that. Corvent has nothing to do with this case. On Ms. Proctor's statement that exclusion never came up before the September 4 agreement, I'd refer the Court to excerpts of record 208 as well as excerpts of record 299 through 309. 208 in particular is an email that I wrote to Judge Beeler after we had a discussion on August 28th where only one case came up. And this is a critical factual error in Judge Beeler's decision which obscures the consideration when you shift from one case to all three. It's flat out wrong and I don't understand how it's persisted to this point. Only one case was talked about on August 28th. When that case was talked about, a restitution concept was used. Meritorious or not, it was used. When Ms. Dice, Federal Counsel, on September 3rd, the day before the transcript, September 4 putative deal, basically changed the terms from August 28th, added two new terms, at least two new terms, including two cases. But we didn't just agree on an $8 million settlement and then have two more cases thrown in for nothing. And so that precipitated major changes to the deal. And it's those changes that are at the core of the flaws in the order below and judgment below. But let me go back really quickly to 208. That's my email. I explicitly reference the benefit of a restitution concept is it's a mistake and there's no implication of wrong. I mean, Ms. Proctor's words were charged with fraud. You don't have that in restitution. It's oops, I'll give you money back if I didn't get it properly. And the benefit of that was you don't need a corporate integrity agreement or protection from exclusion because no one's saying you're a fraudster. When you shift, as Ms. Dice did on September 3rd, and raise the False Claims Act specter, we necessarily shifted and said, well, if that's what we're going to do, we need protection from exclusion and we don't think a corporate integrity agreement is clear. All that predates September 4 on the record. Roberts. So I'm not familiar with the difference between permissive and statutory exclusion. Yes. Did you hear something from this? I think that's hair splitting. No one can release the mandatory actions. If you commit a certain type of act, there are certain mandatory exclusion rules. There's no dispute about that. The dispute is as to program exclusion. And if you don't trigger one of the mandatory exclusion and you're only into the second tier permissive, that's precisely where you get a release of that authority. We could or could not exclude you. We're not so sure. You know what? We think there wasn't malice or intent here. There's a new regime in place and all that sort of stuff. Those are reasons why the OIG could reach that conclusion. That's precisely what Judge Beeler said in this record, by the way. And it's in the record. Judge Beeler comments that this case wasn't what the OIG thought it was. And this is a case where a corporate integrity agreement wouldn't make any sense. OK. So just so I'm clear, so Ms. Brown, Nancy Brown has the authority to grant relief from this permissive exclusion? Yes. And I think you didn't get a clear answer on that question. Now I kind of wish I had asked a more pointed question. But I think the law is the law. And so you will be able to, when you look at the statute, which I wish I had this committed to, it's 42 U.S.C. 1370. I'm botching it. But you'll see in our papers. It should be. If it's not on the table of contents, I'm blaming David. But it should be there. And it's clear as a matter of law what are permissive and what are mandatory. And you'll see that this one falls into the permissive category. That's precisely what Nancy Brown has the authority to release. You're over. But do you have some last point? I only have one point for the state's piece. And on that, I wanted to say, I think that's hair splitting, too. In the September 4 transcript, state counsel telegraphed the concern about supervisory approval. The judge said, counsel, do you have supervisory approval for the terms we're going to enter? And state counsel said, well, as to the false claims that case, but as to what we call the prospective component of this deal, which was a carefully constructed term unique to this case, ironically unique to this case, where we negotiated governing standards. And that was the piece that the state said, I'm not sure we can bind the state to that because we could basically be making law and the governor might veto. And so that was said right there. Lo and behold, that's what came to pass. OK. Thank you very much on both sides for your helpful arguments. The case just argued will be submitted. And we are adjourned for the day.
judges: Wallace, Tashima, Watford